IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | | |
|---|---|---|---|
| BRIAN KEITH WHISTEN, | ) | | |
|     Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Civil Action No. 5:13-cv-00104 | |
| | ) | | |
| CAROLYN W. COLVIN, | ) | | |
| Acting Commissioner, | ) | | |
| Social Security Administration, | ) | By: | Joel C. Hoppe |
|     Defendant. | ) | | United States Magistrate Judge |

**MEMORANDUM OPINION**

Plaintiff Brian Keith Whisten brought this action for review of the Commissioner of Social Security's (the "Commissioner") decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, 1381–1383f. Whisten asserts that the Administrative Law Judge ("ALJ") failed to afford sufficient weight to his treating physician's opinions.

This Court has authority to decide Whisten's case under 42 U.S.C. § 405(g) and 1383(c)(3), and his case is before the undersigned magistrate judge by consent of the parties under 28 U.S.C. § 636(c)(1). ECF No. 24. After considering the administrative record, the parties' briefs and oral arguments, and the applicable law, the Court finds that substantial evidence supports the ALJ's determination and affirms the Commissioner's decision.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute

1

[its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's

regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

II. Procedural History

Whisten protectively filed for SSI and DIB on September 27, 2010. Administrative Record ("R.") 22. He was 40 years old and qualified as a "younger person," 20 C.F.R. §§ 404.1563(c), 416.963(c). R. 29. Whisten had worked as a forklift operator, forklift supervisor, laborer, lumberyard laborer, and pizza baker. *Id.* He alleged disability beginning December 1, 2009, because of back surgery, disc problems, and high blood pressure. R. 69, 77. A state agency denied his applications initially and on reconsideration. R. 22.

Whisten appeared with counsel at an administrative hearing on April 3, 2012. *Id.* He testified to his prior work history, his alleged impairments, and his limitations in daily activities. R. 44–60. A Vocation Expert ("VE") testified to the types of jobs Whisten might perform given his age, education, work history, and physical limitations. R. 60–67.

In a written decision dated June 29, 2012, the ALJ found that Whisten was not disabled under the Act. R. 31. He found that Whisten had not performed substantial gainful activity since his alleged onset date and that he suffered from a severe impairment of degenerative disc disease that did not meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 24–26. He determined that Whisten had the residual functional capacity ("RFC")[1] to perform light work[2]

---

[1] "RFC" is an applicant's ability to work "on a regular and continuing basis" despite his or her limitations. SSR 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record, 20 C.F.R. §§ 404.1545(a),

3

except that he cannot climb ladders, ropes, or scaffolds, cannot walk on uneven surfaces, and must avoid concentrated exposure to hazards. R. 26–29. The ALJ determined that with this RFC, Whisten was unable to perform his past relevant work, but was able to perform jobs that exist in significant numbers in the national economy, such as bagger, stock checker, and laundry sorter. R. 29–30. He therefore found that Whisten was not disabled and denied his applications. R. 30–31. The Appeals Council declined to review the ALJ's decision and this appeal followed. R. 1.

III. Discussion

Whisten asserts that substantial evidence does not support the ALJ's decision to afford two opinions from his treating neurosurgeon "little weight." I find that the ALJ evaluated the medical opinions and Whisten's credibility with the correct legal standard and that substantial evidence supports the ALJ's conclusions.

An ALJ must consider and evaluate medical opinions in the case record from acceptable sources, such as physicians and psychologists. 20 C.F.R. §§ 404.1527, 416.927. A medical opinion is a statement "that reflects judgments about the nature and severity of [an applicant's] impairments," including their symptoms, diagnosis and prognosis, capability, and restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Generally, an ALJ determines the weight to afford a medical opinion by considering a variety of factors, including whether the doctor examined the claimant, the relationship between the doctor and the claimant, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion

---

416.945(a), and reflects the "total limiting effects" of the person's impairments, *id.* §§ 404.1545(e), 416.945(e).

[2] "Light work" involves "lifting no more than 20 pounds at a time," but "frequently" lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Work in this category often requires "a good deal of standing or walking." *Id.* A person who can perform light work generally can also perform "sedentary" work. *Id.*

4

pertains to his or her area of specialty. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65 (4th Cir. 2014) (per curiam) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)); 20 C.F.R. §§ 404.1527(c), 416.927(c). Opinions on dispositive issues reserved to the Commissioner, such as whether an applicant is disabled and what residual functional capacity she or he has, are not considered medical opinions, and ALJs do not give any special significance to the source of an opinion on such issues. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The regulations extend additional deference to the opinions of physicians who have treated the patient, because they are "most able to provide a detailed longitudinal picture of [an applicant's] medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *accord Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). An ALJ must give a treating-source opinion "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating source's opinion does not deserve controlling weight, it is still entitled to some deference, but must be weighed with the same factors as other medical opinions. *Tucker v. Astrue*, 897 F. Supp. 2d 448, 465 (S.D. W. Va. 2012) (citing SSR 96-2p, 1996 WL 374188 (July 2, 1996)). An ALJ may reject a treating physician's opinion in whole or in part if there is "persuasive contrary evidence" in the record. *Hines*, 453 F.3d at 563 n.2; *Mastro*, 270 F.3d at 178; *Tucker*, 897 F. Supp. 2d at 465. When an ALJ gives less than controlling weight to a treating physician's opinion, he or she must specify the weight given to the opinion and offer "good reasons" for that decision. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

5

Whisten's treating neurosurgeon, Dr. Matthew Pollard, M.D., completed two Lumbar Spine Residual Functional Capacity Questionnaires. R. 628–32, 734–37. The ALJ afforded these opinions "little weight," finding them "inadequately supported and inconsistent with the weight of the evidence of record, including Dr. Pollard's observations in contemporaneous treatment notes and his September 2010 statement." R. 29.

The ALJ's latter two reasons are inapposite. The record does not contain notes from Dr. Pollard contemporaneous to his RFC questionnaires. Dr. Pollard's last treatment note is dated March 9, 2011, four months before he completed the first RFC questionnaire on July 11, 2011, and nine months before he completed the second RFC questionnaire on December 23, 2011. See R. 503, 632, 737. In support of his findings, Dr. Pollard cites to diagnostic testing and surgery completed months prior to the questionnaires; he does not cite contemporaneous examinations. R. 628, 734. While there are no contemporaneous treatment notes from Dr. Pollard that contradict his opinions as the ALJ asserts, the lack of contemporaneous examination to support his opinions detracts somewhat from their credibility. *See Mastro*, 270 F.3d at 178 (finding it proper for an ALJ to discount a treating physician's opinion based on the year delay between his examination and his opinion and the lack of clinical documentation of symptoms to support his opinion).

The ALJ also improperly considered Dr. Pollard's September 2010 statement as undermining his later RFC questionnaires. In September 2010, Dr. Pollard wrote that Whisten "may never get back to heavy duty labor." R. 426. This comment was part of a treatment note documenting Dr. Pollard's discussion with Whisten of the potential risks and benefits of Whisten's impending lumbar fusion surgery. *Id.*, R. 490. The ALJ afforded this comment "weight" because it is consistent with the ALJ's light RFC assessment. R. 28. The ALJ implies

6

that Dr. Pollard's post-operative evaluation is less credible because he did not predict before surgery that Whisten would be so physically limited. The ALJ does not explain why a doctor's pre-surgery prediction of a patient's future capability should be valued higher than the doctor's actual observation of the patient's post-surgery abilities, and I cannot endorse the ALJ's rationale.

In addition to the two reasons discussed above, the ALJ found that Dr. Pollard's RFC questionnaires were inadequately supported and inconsistent with the weight of the evidence of record. R. 29. Though conclusory, these reasons are sufficient justification for the ALJ's conclusion as long as they are supported by substantial evidence. *See Shamlee v. Astrue*, No. 2:09cv290, 2010 WL 3187643, at *8–9 (E.D. Va. May 28, 2010), *adopted by* 2010 WL 3187609, at *3 (Aug. 11, 2010) (finding that an ALJ who assigned a treating physician's opinion little weight because it was "not well supported by clinical, medical or diagnostic evidence," without adequately explaining why, had a "conclusory and poorly reasoned" rationale that was nonetheless acceptable because it was supported by substantial evidence in the record.); *cf. Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (noting that an ALJ's failure to explain his findings is harmless "as long as the record provides an adequate explanation of the Commissioner's decision" (internal quotation marks and brackets omitted)). Looking at the record as a whole, substantial evidence supports the ALJ's rationale and resulting opinion weight.

Whisten's medical record shows a gradually worsening back condition leading up to lumbar fusion surgery. From November 19, 2009, to September 9, 2010, treatment notes from Whisten's primary care physician, Dr. Scott M. Seaton, M.D., document increasing complaints of back pain and mild lower extremity strength deficiencies, leading Dr. Seaton to prescribe

7

physical therapy and steroid injections, then refer Whisten to two neurosurgeons, Dr. Gregory A. Helm, M.D., Ph.D., and Dr. Pollard. R. 393–402. A magnetic resonance imaging scan ("MRI") on January 6, 2010, showed moderate herniation at L5-S1, R. 405, while a discography CT scan on August 31, 2010, found annular tears at the L4-5 and L5-6 levels, R. 430–31. Dr. Pollard's notes document that he discussed surgery with Whisten, stating that Whisten would have to live with pain no matter what treatment he pursued, surgery had a 75% chance of obtaining 50% relief, and he may never get back to heavy duty labor. R. 426.

Whisten underwent lumbar fusion surgery on November 19, 2010.[3] R. 490. X-rays and a CT scan immediately after surgery showed that the pedicle screws were in good position and alignment. R. 514, 517. On December 2, 2010, Whisten saw Dr. Pollard and received x-rays of his spine. R. 500, 518. Dr. Pollard wrote that the x-rays showed "good hardware and graft placement." R. 500. Whisten reported pain in his left leg and thigh. R. 500. Whisten returned on December 13, 2010. R. 501. X-rays showed that the hardware remained unchanged in appearance and position and that he was post-operatively stable. R. 519. Whisten reported intermittent pain radiating to his left foot and some cramping. R. 501. Dr. Pollard found no parasthesia, full strength through examination, and normal reflexes. *Id.* He recommended continued symptomatic care and stated that Whisten was improving. *Id.*

Whisten had his first post-surgery appointment with Dr. Seaton on December 14, 2010. R. 654. He reported pain in his left leg. *Id.* His extremities showed no clubbing, cyanosis, or edema. *Id.* On January 17, 2011, Whisten reported to Dr. Seaton that his back pain had not

---

[3]A number of Whisten's treatment notes from the months between his surgery and Dr. Pollard's first RFC questionnaire concern a fatty necrosis Whisten developed in his abdominal wall around his surgical incision. *See, e.g.,* R. 653 (first report of abdominal pain on Dec. 17, 2010), R. 633 (surgical removal of necrosis on June 8, 2011). Surgery resolved this issue, and Whisten does not allege disability from it.

8

improved since the surgery. R. 651. Dr. Seaton encouraged Whisten to exercise and attempt to lose weight. *Id.* An x-ray taken on February 1, 2011, showed that his lumbar fusion remained stable post-surgery. R. 520.

On February 1, 2011, Whisten returned to Dr. Pollard. R. 502. X-rays showed a healing fusion with stable changes since the December examinations. R. 502, 520. The pain Whisten had reported during his last visit was resolved, though he still complained of some intermittent lower back discomfort and right buttock pain. R. 502. Dr. Pollard concluded that he was overall doing better and advised him to "continue to advance his activity level as tolerated." *Id.* Whisten saw Dr. Pollard again on March 9, 2011. R. 503. He reported some dull intermittent pain in his lower back and buttock. *Id.* Dr. Pollard again advised him to increase his activity as tolerated and set a follow-up appointment in three months, at which point Dr. Pollard anticipated scheduling him for physical therapy. *Id.*

On March 15, 2011, Whisten continued to complain of back pain to Dr. Seaton, who referred him to Dr. Helm for a second opinion. R. 650. Dr. Helm examined Whisten on April 5, 2011. R. 600. He found that Whisten had some numbness in the back of his legs, but had normal strength, and he ordered a myelography of Whisten's spine. *Id.* The myelography was performed on April 28, 2011, and showed mild multilevel degenerative changes, mild bilateral compression of the spinal nerve, and no evidence of hardware complication from surgery. R. 591. According to Dr. Seaton's treatment notes, Dr. Helm concluded that conservative therapy was Whisten's best option. R. 649.

On June 1, 2011, Whisten returned to Dr. Seaton, reporting some numbness, pain, and issues balancing. R. 649. On examination, Dr. Seaton found that he had variable strength in his right knee with extension and flexion and in his right hip flexor when compared to his left side,

9

which was consistent and normal. *Id.* He also had normal knee and ankle reflexes and a normal sensory exam. *Id.* Dr. Seaton concluded that he was "a patient with significant myalgias who has variable strength and chronic back pain." *Id.* He prescribed a cane and a starter pack of Savella.[4] On June 22, Whisten told Dr. Seaton that his pain was six out of ten, though it went down to three or four out of ten when he was taking Savella. R. 648. Dr. Seaton wrote that Whisten had chronic back pain and fibromyalgia and recommended continued use of Savella. *Id.*

Dr. Pollard completed the first RFC questionnaire on July 11, 2011. R. 628–32. He diagnosed Whisten with chronic back pain with a poor prognosis. R. 628. Out of fifteen possible objective signs, Dr. Pollard indicated that Whisten suffered from "significantly limited" range of motion, tenderness, and impaired sleep.[5] R. 629. He opined that Whisten could sit for 30 minutes at a time, stand for 20 minutes at a time, and could sit for four hours and stand for two hours in an eight-hour work day. R. 629–30. He noted that Whisten required a cane to stand or walk. R. 630. He stated that Whisten's condition would frequently interfere with his attention and concentration, and require him to take four unscheduled breaks each day and miss four days of work each month. R. 630–31. He found that Whisten could rarely twist, climb stairs, and lift 10 pounds and never stoop, crouch, climb ladders, or lift more than 10 pounds. R. 631. In support of his evaluation, Dr. Pollard referenced Whisten's August 31, 2010, discography and nine office visits. R. 628.

On August 3, 2011, Whisten returned to Dr. Seaton and reported that his back pain prevented him from exercising. R. 647. Dr. Seaton encouraged Whisten to exercise anyway,

---

[4] Savella, or milnacipran, is "used for treating pain associated with fibromyalgia." MedicineNet, *Milnacipran, Savella*, http://www.medicinenet.com/milnacipran/article.htm.

[5] The unchecked objectives signs were: positive straight leg raise, abnormal gait, sensory loss, reflex changes, crepitus, swelling, muscle spasm, muscle atrophy, muscle weakness, impaired appetite or gastritis, and weight change. R. 629.

recommending he get up to 50 minutes of walking per day. *Id.* On October 7, 2011, Whisten complained to Dr. Seaton of lower back pain down to his right calf and said he had recently fallen in the shower. R. 729. On examination, Whisten had tenderness along the lower spine and paraspinous muscles and positive straight leg raise. *Id.* On October 12, a CT scan of Whisten's spine showed acceptable alignment and screw position, no significant disc space narrowing, and though intraspinal details were "suboptimal," no definite disc herniation or nerve root compression. R. 695.

Whisten attended physical therapy for three weeks in December 2011. R. 741–55. Physical therapist Gretchen Cassell completed Whisten's initial evaluation.[6] R. 751–53. She found that he tired easily and had pain, numbness, and tingling throughout both lower extremities, moderate right leg muscle weakness, limited range of motion, and positive straight leg raise in both legs. R. 752. She noted that Whisten could generally move well, though he had increased pain as the session progressed and walked with a mild limp and decreased right knee control as he tired. *Id.* Further physical therapy notes record that Whisten reported back pain with all motions, exercises caused him to shake after only a few repetitions, and his legs shook after standing or walking more than five or ten minutes. R. 741–42. Ms. Cassell concluded after Whisten's last appointment that he would "continue to benefit from [physical therapy] to progress with core stabilization and overall strengthening." R. 742.

---

[6] Physical therapists are not "acceptable medical sources" and cannot give medical opinions about the applicant's condition. *See Adkins v. Colvin*, 4:13cv24, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014) (Kiser, J.); *Craig*, 76 F.3d at 590 (noting that a physical therapist is not an "acceptable medical source"). But they can provide valuable information, including "evidence to show the severity of an impairment, and how it affects an individual's ability to work." *Adkins*, 2014 WL 3734331, at *3 (citing 20 C.F.R. § 404.1513(d)). The physical therapist's observations of Whisten's exercise activities are not medical opinions, but constitute important information that inform the assessment of Whisten's functional capabilities. *See id.*

Dr. Pollard completed the second RFC questionnaire on December 23, 2011. R. 734–37. He again diagnosed Whisten with chronic back pain with a poor prognosis. R. 734. He recorded that Whisten had decreased range of motion and tenderness. R. 735. He opined that Whisten could sit for one hour at a time, stand for 15 minutes at a time, and could sit for six hours and stand for less than two hours in an eight-hour work day. R. 735–36. He noted Whisten's use of a cane to stand or walk. R. 736. He stated that Whisten's condition would frequently interfere with his attention and concentration and require him to take two unscheduled breaks each day and miss two days of work each month. R. 736–37. He found that Whisten could occasionally twist, stoop, and lift 10 pounds; rarely crouch and lift 20 pounds; and never climb ladders, climb stairs, or lift 50 pounds. *Id.* In support of his evaluation, Dr. Pollard referenced Whisten's MRI, surgery, and ten office visits. R. 734.[7]

On January 13, 2012, Whisten saw Dr. Seaton. R. 759–62. He had positive straight leg raise, but normal lower extremity strength. R. 760. Dr. Seaton recommended weight loss and adjusting Whisten's medications. *Id.*

Looking at the preceding record, the RFC questionnaires cannot command controlling weight. As the ALJ noted, even though they were written by a treating physician, they are neither well-supported by clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the record. *Mastro*, 270 F.3d at 178.

The RFC questionnaires have a space for the reviewing doctor to record any clinical findings that support his or her opinion. Dr. Pollard supported his first opinion by reference to

---

[7] Dr. Pollard states that he treated Whisten from July 19, 2010, through October 24, 2011. R. 734. The only treatment note in the record from October 24, 2011, is from Dr. Seaton; it concerns gastrointestinal issues and lacks any discussion, examination, or objective findings related to Whisten's back. R. 727. There is no record of a physical examination by Dr. Pollard on October 24, 2011, or any other date after March 9, 2011, to support his RFC questionnaires. R. 503.

12

the discography from August 31, 2010, R. 431, and his second opinion by reference to the MRI completed on January 6, 2010 and x-rays, R. 407. Both the discography and MRI were taken before Whisten's lumbar fusion surgery on November 19, 2010, R. 490, and identified issues that the surgery was meant to address. *See* R. 426 (documenting Dr. Pollard's discussion with Whisten of how the surgery could help his condition). After the lumbar fusion, x-rays of Whisten's spine consistently showed that the screws and spacers were properly aligned and remained in good position throughout his recovery. *See* R. 514, 517–20, 695. Additional diagnostic findings were repeatedly minor, showing mild degenerative changes and mild nerve compression, R. 591, no significant disc space narrowing, and no definite disc herniation or nerve root compression, R. 695.

Additionally, Whisten repeatedly demonstrated mild medical signs on physical examination. Throughout the fourteen months between Whisten's surgery and the last treatment note, he had occasional numbness, R. 600, 649, 752, occasional positive straight leg raise tests, R. 729, 752, 760, and one report of tenderness, R. 729. Whisten had variable strength in his lower extremities on two occasions, R. 649, 752, and full strength on three occasions, R. 501, 600, 760. He did not display clubbing, cyanosis, edema, reflex changes, muscle spasm, or muscle atrophy. R. 654; *see generally* R. 501–760. Even Dr. Pollard's RFC questionnaires indicated only decreased range of motion, tenderness, and weight change as objective signs of Whisten's limitations; they did not indicate that Whisten displayed positive straight leg raise, abnormal gait, sensory loss, reflex changes, crepitus, swelling, muscle spasm, muscle atrophy, or muscle weakness. R. 629, 735.

The ALJ evaluated Dr. Pollard's opinions under the proper standard, considering whether the doctor examined the claimant, the relationship between the doctor and the claimant, the

13

degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. *See Bishop*, 583 F. App'x at 65; 20 C.F.R. §§ 404.1527(c), 416.927(c). Dr. Pollard was a treating neurosurgeon. He gave opinions within his area of expertise, and he had an ongoing relationship with Whisten, though he had stopped seeing him four months prior to his first opinion. As the ALJ correctly noted, however, Dr. Pollard's opinions are "inconsistent with the weight of the evidence of record." R. 29.

As outlined above, the generally mild diagnostic findings and medical signs contained in the record do not support the severe limitations expressed in Dr. Pollard's RFC questionnaires. Additionally, the consistent theme of the medical advice given to Whisten after his surgery was to lose weight and increase activity. At his last appointment with Whisten, Dr. Pollard suggested that he continue to increase his activity level and anticipated sending him to physical therapy in three months. R. 502. Dr. Seaton repeatedly recommended that Whisten exercise and lose weight, R. 651, 647, 760, and wanted him to work up to fifty minutes of walking per day, R. 647. After examination and diagnostic testing, consulting neurosurgeon Dr. Helm concluded that conservative therapy was Whisten's best option. R. 649. Whisten's physical therapist noted that he moved well, but experienced increased pain and difficulty as he tired. R. 752. She concluded that Whisten would "continue to benefit from [physical therapy] to progress with core stabilization and overall strengthening." R. 742.

In formulating Whisten's RFC, the ALJ relied in part on the findings of the state-agency physicians. Dr. Ralph Hellams, M.D., concluded on December 8, 2010, that Whisten could perform light work without any postural limitations.[8] R. 79–81. Dr. Paul Frye, M.D., issued the

---

[8] Dr. Hellams had few, if any, of Whisten's post-surgical records. *See* R. 79–81. As the second DDS opinion clearly has records of the surgery and recommends a more restrictive RFC than Dr. Hellams, I refrain from closely analyzing the first opinion. *See* R. 91–94.

14

reconsideration opinion and concluded that Whisten could perform light work, sit and stand for six hours in an eight-hour workday, frequently climb ramps and stairs, and occasionally crawl, kneel, crouch, stoop, and climb ladders, ropes, or scaffolds. R. 93–94. Dr. Frye evaluated the objective evidence of Whisten's condition as of May 23, 2011, two months before Dr. Pollard's first opinion. Dr. Frye's findings are inconsistent with the severe limitations Dr. Pollard placed upon Whisten two months further into his recovery from surgery. When the ALJ made his own RFC assessment, he afforded the DDS opinions partial weight, adopting their finding that Whisten could do light work, but adding additional postural limitations. R. 28.

Considering the diagnostic and clinical findings, the objective signs from physical examination, and the treatment recommended by medical care providers, substantial evidence supports the ALJ's decision to afford Dr. Pollard's medical opinions "little weight." The same evidence supports the ALJ's decision to assign "partial weight" to Dr. Frye's opinion. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

Whisten disputes the ALJ's finding that side effects from his medications were mild and would not interfere with his ability to work. Pl. Br. 11–12; *see* R. 28. The record contains instances where a physician noted Whisten experienced drowsiness and dizziness from medications, but no evidence contradicts the ALJ's finding that these symptoms were mild. *See, e.g.,* R. 629, 735. Moreover, no medical opinion relates these mild side effects to any functional limitation. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (noting that common medication side effects "should not be viewed as disabling unless the record reflects serious functional limitations").

15

Whisten argues that his testimony at the administrative hearing provides additional support for Dr. Pollard's opinions. Pl. Br. 10–14. Whisten contends that the ALJ's assessment of his credibility relied on misstating the record and drawing unsupported conclusions.[9] *Id.*

The Fourth Circuit recently reminded reviewing courts that they should defer to an ALJ's credibility finding absent "exceptional circumstances." *Bishop*, 583 F. App'x at 65 (citing *Edelco, Inc. v. NLRB*, 132 F. 3d 1007, 1011 (4th Cir. 1997)). "Exceptional circumstances include cases where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Edelco*, 132 F.3d at 1011. In *Bishop*, the Fourth Circuit found that substantial evidence supported the ALJ's adverse credibility determination because he applied the correct legal standard, "cited specific contradictory evidence[,] and averred that the entire record had been reviewed." 583 F. App'x at 65.

Whisten's case does not present exceptional circumstances. Whisten's objection that the ALJ misstated or disregarded evidence in the record supporting his statements is flawed for two reasons. First, it ignores the ALJ's fundamental reasoning for discounting Whisten's statements, which he provided at the beginning of his credibility analysis: "The undersigned notes that the diagnostic and clinical findings discussed above are not suggestive of total disability." R. 28. As this Opinion previously details, the medical evidence does not support the limitations found by Dr. Pollard. A corollary of this finding is that this evidence also does not support Whisten's subjective claims of total disability. *See Craig*, 76 F.3d at 594. Much of the evidence that

---

[9] Whisten correctly points out that the ALJ seems to have made a finding as to his RFC before assessing his credibility, reversing the analysis. Pl. Br. 10. Explaining his findings out of sequence, however, does not undermine the ALJ's decision. The ALJ thoroughly addressed Whisten's credibility and provided a rationale for his determination that is supported by substantial evidence. Thus, I agree with my colleagues that while the ALJ's order of analysis is "unfortunate," it does not warrant reversal. *See, e.g.*, *Martin v. Colvin*, No. 5:12cv66, 2013 WL 4451230, at *7 (W.D. Va. Aug. 16, 2013); *Racey v Astrue*, No. 5:12cv36, 2013 WL 589223, at *6 (W.D. Va. Feb. 13, 2013); *see also Bishop*, 583 F. App'x at 67–68..

Whisten claims was ignored, such as Dr. Pollard's statements that Whisten requires a cane to ambulate, was considered by the ALJ and given little weight because it was contrary to the majority of the objective evidence. Second, the ALJ stated that he considered the whole record, and, absent evidence to the contrary, this Court must take him at his word. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Whisten does not "point to any specific piece of evidence not considered by the [ALJ] that might have changed the outcome of his disability claim." *Id.* (emphasis omitted). As such, the Court must conclude that the Commissioner's decision was based on the entire record and the ALJ's failure to expressly mention certain evidence was harmless. *See id.*

In formulating Whisten's RFC, the ALJ properly evaluated the medical evidence and opinions and Whisten's credibility. Accordingly, I find that substantial evidence supports the ALJ's determination of Whisten's RFC.

## IV. Conclusion

The ALJ applied the correct legal standard to evaluate the evidence of record, including Whisten's treating physician's opinions, and Whisten's credibility. Furthermore, the Court finds that substantial evidence supports the ALJ's conclusion that Whisten is not disabled under the Act. Therefore, the Court **GRANTS** the Commissioner's Motion for Summary Judgment, ECF No. 20, **DENIES** Whisten's Motion for Summary Judgment, ECF No. 15, and **DISMISSES** this case from the Court's active docket.

ENTER: December 23, 2014

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge